**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------x
:
ALL SMILESSS, LLC,                            :   Civil Action No.: _____
:
       Plaintiff,                                  :
:
v.                                            :   **COMPLAINT**
:
GIOVANNI GUSSEN,                              :   **Jury Trial Demanded**
:
       Defendant.                                 :
:
------------------------------------------------------------x

Plaintiff, ALL SMILESSS, LLC ("Plaintiff"), by and through its undersigned attorneys, hereby files this Complaint against Defendant GIOVANNI GUSSEN ("Defendant") and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of the State of Wyoming and a citizen of the State of New Jersey and the amount in controversy exceeds $75,000, exclusive of interest and costs, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(b).

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district.

## PARTIES

3. Plaintiff ALL SMILESSS, LLC is a limited liability company organized under the laws of the State of Wyoming and registered to do business in the State of Wyoming with a principal place of business and address for service of process located at 30 North Gould Street, Suite 26675, Sheridan, WY 82801.

4. Plaintiff is the brainchild of Waheed Ahmadzai ("Waheed"), a 22-year-old Afghan refugee

who came to the United States in 2015 to escape the horrors of the U.S. War in Afghanistan.

5. Defendant GIOVANNI GUSSEN is a citizen of the State of New Jersey who resides at 161 North Main Street, Mullica Hill, NJ 08062.

## MATERIAL FACTS

**A. Background of the Plaintiff's Founder, Waheed Ahmadzai**

6. Waheed was born on January 20, 2000, in Kabul, Afghanistan.

7. Waheed's father passed away when Waheed was five years old. Waheed's mother raised Waheed and his three older brothers and older sister by herself.

8. Over time, Waheed's siblings emigrated from Afghanistan into safer countries, including the United States and Germany.

9. In 2015, when Waheed was fifteen years old, he obtained a student visa which permitted him to attend high school in the United States. Waheed attended Cotter High School in Winona, Minnesota.

10. In 2017, Waheed's mother joined Waheed and his older brother in Minnesota.

11. Waheed graduated high school in 2019.

12. After high school, Waheed enrolled at Minnesota Community and Technical College in Minneapolis, MN to continue his education.

13. During this time, Waheed proudly became a permanent resident of the United States.

**B. Waheed's Artistic Journey**

14. Like many teenagers, Waheed quickly adopted social media. He created accounts on platforms such as Instagram, Twitter, and others.

15. Hip-hop music resonated with Waheed in a deep way, and he immersed himself in this music genre and culture.

16.     In or around 2019, Waheed began making digital collages and artwork on his cell phone and sharing it with his friends and followers on various social media platforms.

17.     Waheed's artistic expression and craft reflected his love of hip-hop through the lens of an Afghan immigrant living in the United States.

18.     Waheed's work caught the eye of a famous rapper's manager, who reposted one of Waheed's creations on his Instagram account.

19.     Waheed's social media accounts flooded with followers and fans.

20.     Waheed's artwork became popular with major hip-hop artists, one of whom commissioned Waheed to design his album cover. That album went to No. 1 on the music charts and Waheed's popularity surged.

21.     This 21-year-old Afghan hip-hop fan and visual artist became an internet celebrity seemingly overnight.

22.     Waheed's sole goal has been to spread his message of community and compassion through artwork and to support his mother and loving family.

**C.      Waheed Meets the Defendant**

23.     At the suggestion of a friend, Waheed began exploring the world of digital assets known as non-fungible tokens ("NFTs") as a way to share his work with his fans and followers.

24.     Eager to learn more about this new and quickly expanding space, Waheed started using an app called Clubhouse to chat with other users about NFTs, digital art, and his other interests.

25.     In or around Spring 2021, Waheed met Defendant through the Clubhouse app.

26.     Defendant represented himself to Waheed as an expert in developing start-up companies in the digital space. He claimed to have extensive business experience.

27.     Defendant was a 26-year-old with a high school education and little to no real business

experience.

28. Defendant and Waheed chatted frequently on Clubhouse and later by text message and telephone. They did not meet in person until much later.

29. Defendant groomed Waheed with free advice and assistance on how to share his artwork with others using NFTs.

30. Through a series of false representations about his business acumen and experience, Defendant convinced Waheed that he was an experienced businessperson with Waheed's best interests at heart.

31. Waheed was impressed with Defendant's apparent knowledge of the NFT world and happy to have met someone he believed to be a friend.

**D.    Waheed and Defendant Reach an Enforceable Oral Agreement as to the Terms of their Relationship**

32. In or around August 2021, Defendant offered to help Waheed with forming and developing a business entity to market Waheed's work, to be named All Smilesss.

33. In this discussion, Defendant promised, among other things, that: 1) he would hire competent counsel to draft an operating agreement; 2) he would engage a competent accountant to handle the company's tax filings and related matters; 3) he would engage a competent marketing team to increase brand awareness; and 4) he would devote his full time and attention to, and use his best efforts in, managing the day-to-day operations of the company.

34. In exchange for these promises, Defendant requested that the company employ him as Chief Executive Officer and remunerate him with a one-time payment of fifteen percent (15%) of the company's net profits from the initial project.

35. The parties further agreed that Waheed, as creator and originator of the All Smilesss brand and its intellectual property, would receive a one-time payment of thirty percent (30%) of the

company's net profits from the initial project.

36. The parties further agreed that All Smilesss' coder (responsible for converting the digital art into a digital asset on the blockchain – a process known as "minting") would receive approximately 17.5% of the company's net profits from the initial project.

37. The parties further agreed that the company would retain the remaining percentage of the net profits from the initial project, i.e., 62.5%, to be used for operating expenses, including taxes.

38. Waheed and Defendant mutually understood the terms of their agreement, exchanged consideration, and thus formed an enforceable contract (the "Oral Agreement").

39. Waheed and Defendant projected that the company's initial project could yield potentially millions of dollars.

E. **Defendant Procures Waheed's Signature on a Written Agreement Under False Pretenses**

40. In or around September 25 or 26, 2021, Defendant forwarded a written operating agreement to Waheed for his signature (the "Disputed Contract").

41. Defendant falsely represented that the Disputed Contract had been drafted by an attorney specializing in the NFT space.

42. The Disputed Contract was not drafted by an attorney, but rather an internet-based "legal advocate" who has publicly and, apparently, falsely, held herself out to be an attorney.

43. Waheed relied on this misrepresentation as it gave the Disputed Contract an air of authenticity.

44. Defendant falsely represented that the Disputed Contract accurately captured the material terms of the Oral Agreement, including that Waheed would remain the 100% owner of All Smilesss and Defendant would be employed as Chief Executive Officer.

45. The Disputed Contract did not capture the material terms of the Agreement at all.

46. Defendant did not recommend that Waheed have the Disputed Contract reviewed by his own attorney.

47. Defendant urged Waheed to sign the Disputed Contract quickly so that the "attorney" could register the company.

48. Waheed read the Disputed Contract and noticed that Defendant had listed himself as the 49% owner of the new entity, not as an employee or, at best, a business advisor. Waheed questioned Defendant about this.

49. When asked about the percentages, Defendant falsely stated that the 49% ownership did not relate to the profits of the business, but only to the management of the company. In other words, Waheed would have the majority vote on management matters and retain decision making control.

50. Waheed, a 21-year-old Afghan immigrant, trusted the Defendant, his online friend, and executed the agreement on September 27, 2021. At that point, they had still not met face to face.

51. On or about September 28, 2021, Plaintiff came into being as a Wyoming limited liability company.

**F.      Plaintiff Launches its First Project Successfully and Earns Substantial Revenue**

52. For the next three months, Waheed worked tirelessly to create his first collection of artworks to be minted as NFTs. This collection eventually grew to 8,888 individual pieces of art.

53. Waheed's work was and is innovative and exciting as it tells a visual story from the perspective of a "brown kid" living in a majority white society. His artwork is known for being three-dimensional (where most visual NFTs are two-dimensional) and rendered digitally in high quality.

54. The NFTs were released to the public on November 3, 2022, and immediately sold out, earning approximately $4,000,000 in revenue at the then-current cryptocurrency rates.

55. Around this time Waheed and Defendant met face to face for the first time.

56. When revenue began pouring in, the Company made profit-sharing payments according to the Oral Agreement, not the Disputed Contract. Waheed received approximately $1.1 million (roughly 30%) and Defendant received approximately $529,000 (roughly 15%). Both Waheed and Defendant agreed to these profit-sharing payments.

**G.     Defendant Fails in His Role as Chief Executive Officer**

57. Defendant received a windfall payment of roughly $529,000 only weeks after becoming CEO, before he had performed any substantive work.

58. After receiving this windfall payment, Defendant failed to act in the best interests of Plaintiff and failed in his role as Chief Executive Officer.

59. By way of example, and not of limitation, Defendant failed to hire a competent accountant to manage Plaintiff's taxes and related accounting matters. As of this date, Plaintiff has yet to file its 2021 or 2022 tax returns.

60. As a further example, Defendant hired incompetent cronies as employees or consultants in marketing and other areas and paid them exorbitant fees or salaries with little to show for it. Defendant also hired unnecessary staff causing the Plaintiff to incur unnecessary expense.

61. Defendant failed to use his best efforts and devote his time and attention to the Plaintiff.

62. By way of example, and not of limitation, Plaintiff planned a large live event in New York City to support the All Smilesss brand. The crony "marketing advisor" hired by Defendant failed to plan the event according to the agreed-upon timetable, causing Waheed to have to scramble to organize the event himself in a matter of days, incurring significant extra expense in doing so. Defendant offered no assistance whatsoever although it was his area of responsibility.

63. Defendant failed to execute his responsibilities as CEO when it came to running the day-

to-day operations of the company.

### H. Waheed Terminates Defendant

64. Over time, Waheed began to realize that Defendant was not the experienced businessperson he had represented himself to be, was not a friend, and was not acting in Waheed's best interests. Waheed came to understand that he had been taken advantage of by an internet charlatan.

65. Waheed brought his concerns about Defendant's qualifications and conduct to Defendant's attention in or around August 2022.

66. After discussion, Waheed informed Defendant that his services were no longer required, but that he would treat Defendant fairly.

67. Defendant expressed concern that he needed more money because he was living at home and working in his father's restaurant.

68. Waheed offered to pay Defendant $150,000 to $200,000 as severance pay in exchange for his separation from the company. This amount was intended to cover Defendant's tax liability on his profit share.

69. A short while later, however, Defendant countered with unrealistic demands. He now wanted approximately $618,000 plus $2,000,000 over 24 months. Defendant claimed he was due this money because of his 49% ownership of Plaintiff.

70. This was the first time in the parties' relationship where Defendant ever stated or implied that he had a right to an ownership distribution.

71. Waheed was completely shocked. Waheed, on behalf of Plaintiff, told Defendant that this made no sense and was impossible. Waheed never intended to give away half his company's profits and future revenues to Defendant.

72. On August 31, 2022, Defendant demanded approximately $600,000, plus $1 million, plus

15% of the company's future assets and licensing.

**I.      Defendant Embezzles Over $600,000 in Company Funds**

73.    In early September 2022, Waheed requested administrative access to Plaintiff's bank account and passwords to Plaintiff's cryptocurrency wallets. Defendant refused to provide this information.

74.    On September 8, 2022, Plaintiff contacted Defendant through its attorney to direct Defendant to stop communicating with Waheed directly.

75.    On Friday, September 9, 2022, Defendant withdrew over $600,000 from Plaintiff's operating account. He did so unilaterally, without notice to or authorization from Waheed or Plaintiff.

76.    The whereabouts of these funds is presently unknown.

77.    Defendant is refusing to return these funds and appears to be holding them hostage to force Waheed into an unfavorable negotiating position.

**COUNT ONE**

**(Declaratory Judgment as to the Disputed Contract)**

78.    Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

79.    Defendant offered Waheed the Disputed Contract under false pretenses and with the intent to defraud Waheed and rob him of his artistic creations, livelihood, and ability to support his family. Defendant's offer was invalid.

80.    Waheed signed the Disputed Contract in reliance on Defendant's misrepresentations, including that Waheed's ownership of the Company was 100% and that the 49% allocated to Defendant in the Disputed Contract related to management decisions only. Waheed's "acceptance"

was invalid as it was obtained by fraud.

81. Waheed did not intend to give away 49% of all revenue derived from his creative vision and artwork – approximately $2,000,000 to date, excluding future royalty payments, in exchange for Defendant's employment as CEO for less than a year.

82. Conversely, Defendant did intend to defraud Waheed and rob him of his creative vision and artwork and destroy his livelihood and ability to support his family.

83. The parties had no meeting of the minds as to the Disputed Contract.

84. The Disputed Contract is void and unenforceable.

85. Alternatively, the Disputed Contract is unconscionable and cannot be enforced under principles of equity.

86. On information and belief, Defendant justifies his unilateral, wholly improper, and potentially illegal withdrawal of funds from Plaintiff's bank account by citing to the fraudulent percentages set forth in the Disputed Contract.

87. Plaintiff is suffering and will continue to suffer harm while the Disputed Contract remains in dispute.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment declaring that the Disputed Contract is void and unenforceable and to grant such other relief as the Court deems proper.

## COUNT TWO

### (Declaratory Judgment as to the Oral Agreement)

88. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

89. Waheed offered Defendant employment as Chief Executive Officer of Plaintiff in exchange

for remuneration in the amount of fifteen percent (15%) of Plaintiff's net profits from its initial project.

90. Defendant unconditionally and timely accepted Waheed's offer to act as Chief Executive Officer and perform all the functions attendant to that role, including the day-to-day operation of the business.

91. The parties' offer and acceptance constituted a meeting of the minds as to these terms.

92. The parties exchanged valuable consideration in forming this contract.

93. The parties acted in accordance with this contract when Plaintiff made profit-sharing payments of 15% to Defendant and 30% to Waheed.

94. The parties formed an enforceable contract.

95. Plaintiff is an intended beneficiary of the Agreement between Waheed and Defendant and thus has standing to seek relief.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment declaring that the Oral Agreement constitutes an enforceable contract and to grant such other relief as the Court deems proper.

## COUNT THREE

### (Breach of Fiduciary Duty)

96. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

97. Defendant, as an employee of Plaintiff and its Chief Executive Officer, owed Plaintiff a duty of loyalty.

98. Such duty required Defendant to act in the best interests of Plaintiff at all times and take no action to intentionally harm Plaintiff.

99. Defendant violated his duty of loyalty to Plaintiff by misappropriating over $600,000 in company funds and refusing to return same.

100. Defendant violated his duty of loyalty by committing fraud, wasting corporate assets, and looting corporate assets.

101. Defendant's actions constitute a breach of his duty of loyalty.

102. Alternatively, Defendant's actions as a member of Plaintiff constitute a breach of his fiduciary duties toward Plaintiff.

103. As a result of Defendant's actions, Plaintiff is entitled to damages.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment against Defendant and award Plaintiff injunctive and monetary relief and grant such other relief as the Court deems proper.

## COUNT FOUR

**(Breach of Contract – Oral Agreement)**

104. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

105. Waheed and Defendant formed an enforceable agreement in August 2021 to the effect that Defendant would act as CEO of Plaintiff, and perform his duties faithfully and loyally, in exchange for 15% of the Company's net profits from its initial project (the "Oral Agreement" as previously defined).

106. Defendant failed to timely perform all or any part of what he promised in the Oral Agreement, including, but not limited to 1) failing to hire competent counsel to draft an operating agreement; 2) failing to engage a competent accountant to handle the company's tax filings and related matters; 3) failing to cause the company to file tax returns in 2021 and 2022; 3) failing to

engage a competent marketing team to increase brand awareness; and 4) failing to devote his full time and attention to, and use his best efforts in, managing the day-to-day operations of the company.

107. The parties intended Plaintiff to be a beneficiary of the Oral Agreement.

108. Defendant's actions constitute a breach of contract.

109. As a result of Defendant's actions, Plaintiff has been harmed.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment against Defendant and award Plaintiff injunctive and monetary relief and grant such other relief as the Court deems proper.

## COUNT FIVE

### (Breach of the Covenant of Good Faith and Fair Dealing)

110. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

111. The Oral Agreement imposed upon each party thereto a duty of good faith and fair dealing in its performance and its enforcement.

112. The parties intended Plaintiff to be a beneficiary of the Oral Agreement.

113. Defendant's actions constitute a breach of the covenant of good faith and fair dealing.

114. As a result of Defendant's action, Plaintiff has been harmed.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment against Defendant and award Plaintiff injunctive and monetary relief and grant such other relief as the Court deems proper.

## COUNT SIX

### (Fraud)

115. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

116. Defendant made one or more false representations to Waheed intending him to take action, including, but not limited to, misrepresenting that the percentages listed in the Disputed Contract related to management decisions only.

117. Waheed reasonably believed the representations to be true.

118. Waheed, on behalf of Plaintiff, relied on the false representations and signed the Disputed Contract.

119. As a result of Defendant's fraud, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment against Defendant and award Plaintiff injunctive and monetary relief and grant such other relief as the Court deems proper.

## COUNT SEVEN

### (Negligent Misrepresentation)

120. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

121. Defendant, in the course of his business, profession or employment, or in other transactions in which he had a pecuniary interest, supplied false information to Waheed (on behalf of Plaintiff) and Plaintiff for the guidance of their business transactions.

122. Waheed (on behalf of Plaintiff) and Plaintiff justifiably relied upon the information supplied by Defendant.

123. Defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

124. As a result of Defendant's actions, Plaintiff suffered pecuniary loss.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment against Defendant and award Plaintiff injunctive and monetary relief and grant such other relief as the Court deems proper.

## COUNT EIGHT

### (Conversion)

125. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

126. Defendant converted Plaintiff's property, *i.e.*, the embezzled funds of over $600,000, by treating it as his own and denying Plaintiff of the benefits and rights of ownership.

127. Plaintiff had legal title to the property.

128. Plaintiff had possession of the property or the right to possess it at the time of the conversion.

129. Defendant exercised dominion over the property in a manner which denied Plaintiff its rights to use and enjoy the property.

130. As a result of Defendant's actions, Plaintiff has suffered damages by the loss of its property.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment against Defendant and award Plaintiff injunctive and monetary relief and grant such other relief as the Court deems proper.

## COUNT NINE

### (Unjust Enrichment)

131. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

132. Defendant unjustly enriched himself at the expense of Plaintiff by misappropriating and embezzling over $600,000 of company funds.

133. Defendant should be required to make restitution of or for property or benefits received, retained, or misappropriated, because it is just and equitable that such restitution be made.

134. Restitution will involve no violation or frustration of law or opposition to public policy, either directly or indirectly.

WHEREFORE, Plaintiff respectfully requests the Court to enter a judgment against Defendant and award Plaintiff injunctive relief and grant such other relief as the Court deems proper.

## COUNT TEN

### (Injunctive Relief)

135. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

136. Defendant's actions in misappropriating and embezzling over $600,000 and failing to give Waheed access to critical administrative access and passwords to cryptocurrency wallets and other digital assets, such as social media accounts, constitutes an emergency which can only be addressed by preliminary and permanent injunctions.

137. Plaintiff is suffering irreparable harm because, among other things, it is unable to conduct business without access to its bank accounts and cryptocurrency wallets.

138. Plaintiff is also suffering reputational damage and damage to its goodwill from Defendant's

actions. The buyers of Plaintiff's first NFT collection are understandably concerned about the company's future given Defendant's conduct. This distorts the market for Waheed's artwork in tangible and intangible ways.

139. Plaintiff is likely to succeed on one or more if its causes of action against Defendant.

140. Principles of equity favor the grant of a preliminary injunction with the following terms:

   a. Requiring Defendant to immediately surrender to Plaintiff all passwords, log in information, access information, and any other credentials related to the storage of Plaintiff's digital assets, including cryptocurrency wallets, NFTs, intellectual property, and any other digital assets of the company, including social media accounts and online stores;

   b. Requiring Defendant to immediately surrender his access to the company's business and banking accounts, including digital wallets or, in the alternative, consent to designating the company's cryptowallets as "multi-sig" wallets to which both Waheed and Defendant would have access and rights.

   c. Requiring Defendant to immediately surrender to Plaintiff the funds misappropriated by him on September 9, 2022;

   d. Preventing Defendant from further accessing any of Plaintiff's bank accounts, cryptocurrency wallets, or other assets;

   e. Ordering Defendant to immediately surrender all books and records of the Company.

   f. Ordering an accounting of Plaintiff's books, records, and accounts;

   g. Preventing Defendant from harassing, threatening, defaming, demeaning, or making any comments which put Waheed or the company in a negative light, in

any manner, to any person or group of people, directly or indirectly, in any forum, whether online, offline, in writing or verbally, during the pendency of this action;

h. Preventing Defendant from contacting Waheed for any reasons during the pendency of this action for any reasons, except through counsel;

i. Ordering Waheed and Defendant to return to Plaintiff all monies previously disbursed to them as profits so that all company expenses, taxes, liabilities and debts may be properly paid, settled, and/or accounted for;

j. Preventing any withdrawals from the Company's bank accounts and digital wallets except to pay expenses incurred in the normal course of business, including attorney's fees and company payroll; and

k. Expelling or removing Defendant as a member of the company under the provisions of the Wyoming Limited Liability Company Act.

Dated: September 11, 2022

                                                                  KOUTSOUDAKIS & IAKOVOU LAW GROUP, PLLC

By:   */s/ Steven Siegler*
            _____
       Steven Siegler, Esq. (SS-1224)
       40 Wall Street, 49th Floor
       New York, New York 10004
       Tel.: (212) 404-8623
       Fax: (332) 777-1884
       *Attorneys for Plaintiff*